THOMPSON ET UX. v. ROGERS, RICHARDSON & Co.

1. **Homestead**: EXCHANGE OF: EXISTING DEBTS. When the homestead is sold and the proceeds invested in another one, or when the homestead is exchanged for another, the latter in each instance, to the extent in value of the old, is exempt from existing debts at the time the exchange is made, but to that extent only.

*Appeal from Jackson Circuit Court.*

MONDAY, JUNE 9.

THIS is an action for the setting aside of a sheriff's sale to the defendants of the undivided half of the south half of lot 3, in half block 4, in town of Sabula. The cause was submitted to the court upon an agreed statement of facts, as

follows: "In the year 1873 the plaintiff Horatio Thompson was owner of a house and lot in the recorded plat of the town of Preston, Iowa, consisting of less than one-half acre, which was owned and occupied by the plaintiffs, as their homestead, to and until the 1st day of June, 1873, at which time the plaintiffs sold said premises for six hundred dollars and immediately removed to the town of Sabula, Iowa, and with the proceeds of said sale said Horatio, immediately thereafter, purchased a house and lot, being lots 4 and 13, in block 21, of Sabula, of less than one-half acre, in the recorded plat of the said town of Sabula, for which he paid, of said money, five hundred dollars down, and assumed a mortgage of three hundred dollars, and with the balance of said six hundred dollars, to-wit: one hundred dollars, and one hundred dollars additional, he purchased the south half of lot 3, in half block 4, Sabula, of less than one-half acre, in the town plat of said town of Sabula; that, shortly after, the said Horatio built a two-story frame building on said last mentioned lot, suitable for shop in front room below, and back rooms and rooms above for dwelling-house; that on November 29, 1875, he sold and conveyed an undivided one-half of said last mentioned premises to one John McElroy for five hundred dollars, who, in company with said Horatio Thompson, used said building as a meat shop; that on the 4th day of August, 1876, the said Horatio exchanged said premises, in said block 21, which he then used and occupied as a homestead, with said John McElroy for his said undivided half of said premises in half block 4, the said McElroy assuming said mortgage on said premises in said block 21; that immediately thereafter the plaintiffs moved into said premises, which had been owned in part by said McElroy and for which they had traded, and moved into the house thereon, and have ever since used and occupied the same as the homestead of the plaintiffs; that during the year 1874, and while the plaintiff owned and occupied said premises, in the town of Preston, as a homestead, the said Horatio Thomp-

son contracted a debt of one hundred dollars to the defendants herein, and gave his promissory note therefor; that on the 6th day of January, 1877, said defendants commenced a suit in this court against said Horatio Thompson for said note and interest thereon, and sued out a writ of attachment, and on said day levied on the real estate in controversy in this suit, then occupied by the plaintiffs; and, on the 24th day of January, 1877, in said court, the defendants obtained a judgment against the said Horatio Thompson for one hundred and twenty-six dollars and fifty-five cents, and costs to the amount of nine dollars and forty-five cents, and an order for a special execution for the sale of said attached premises: the notice of suit notified said Horatio that a writ of attachment had been sued out against him, but did not notify him that said property had been attached; that on the 21st day of August, 1877, the sheriff of Jackson county, by virtue of a special execution issued on said judgment, sold said attached premises to said defendants at sheriff's sale, for the amount of said judgment, costs and accruing costs, one hundred and sixty-seven dollars and fifty-one cents; that at the time of said sheriff's sale the said Horatio Thompson appeared and notified the sheriff and said defendants that he claimed said premises as his homestead; that said Emma K. Thompson is the wife of said Horatio Thompson, and has been his wife since 1861, and during that time has lived with said Horatio as his wife; that no notice of the commencement of said suit or suing out of said attachment was ever served on her; that she had no knowledge of the service of or suing out of said attachment; that she had no notice served on her of the sale of said premises by the sheriff, or any knowledge of said sale, neither did she ever authorize or consent to the sale of said property; that said plaintiffs own no other real estate than that mentioned herein; that said premises, consisting of said south half of lot 3, in half block 4, of Sabula, does not exceed in value six hundred dollars."

The court found that at the time of the sale on the defend-

ants' judgment the real estate sold was the homestead of the plaintiffs, and adjudged that the sale be set aside. The defendants appeal.

*A. L. Bartholomew*, for appellants.

No argument for appellees.

DAY, J.—From the agreed statement of facts, standing alone, the conclusion would be reached that the whole of the south half of lot 3, in half block 4, was sold at sheriff's sale, and is now in controversy in this action. The petition, however, alleges that a writ of attachment was levied on the real estate described as the undivided one-half of the south half of lot 3, in half block 4, in the town of Sabula, and the sheriff sold said premises under a special execution to the defendants for one hundred and sixty-seven dollars and fifty-one cents. Only the undivided half of the south half of said lot 3 is in controversy in this action. It is conceded by appellant that the undivided half of said lot 3, sold to John McElroy, and afterward traded for by the plaintiffs, is not subject to the judgment in question. It is conceded that on the 1st day of June, 1875, the plaintiffs acquired a homestead in lots 4 and 13, of block 21, in Sabula, which was not liable for the debt in question. The plaintiffs, however, with one hundred dollars of the price received for the Preston homestead, and one hundred dollars additional, bought the south half of lot 3, in half block 4. Shortly thereafter the plaintiff Horatio Thompson built on said lot a two-story frame building, suitable for a shop in the front room below, and for a dwelling-house in the back rooms and rooms above. This property was not the homestead of the plaintiffs, and it was liable to be subjected to the debt in question.

On the 29th day of November, 1875, the plaintiffs conveyed an undivided one-half of this property to John McElroy for five hundred dollars. The plaintiffs then held their homestead, in lots 4 and 13, of block 21, exempt from liabil-

*[margin note: 1. HOMESTEAD: exchange: existing debts.]*

ity for this debt, and the undivided one-half of lot 3, in block 4, subject to be made liable therefor.

On the 4th day of August, 1876, the plaintiffs exchanged their homestead in block 21 for the undivided half of lot 3, in half block 4, sold to John McElroy, he assuming the mortgage on the property in block 21. The plaintiffs immediately thereafter moved into said premises in block 4, and occupied them as their homestead at the time the judgment in question was recovered and the sale was made. The appellants concede that, by the exchange in question, the plaintiffs acquired a homestead in the undivided half of lot 3, in block 4, which they received in exchange for their homestead from McElroy, which is not liable for the judgment in question. See *Thorn v. Thorn*, 14 Iowa, 49. Appellants insist, however, that the other undivided half of lot 3, which before the exchange was liable for the debt, was not, by the exchange, released from liability. The Code provides: "The owner may, from time to time, change the limits of the homestead by changing the metes and bounds, * * * or may change it entirely. * * * * The new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former homestead would have been exempt, but in no other, nor in any greater degree." Sections 2000, 2001. See, also, *Pearson v. Minturn*, 18 Iowa, 36. If the plaintiffs had simply selected a new, without disposing of the old, homestead, it is clear that the new, to the extent in value of the old, would be exempt from liability for debts, for, under such circumstances, the act which would exempt one piece of property would render another, of equal value, liable. It is plain, also, that where the old homestead is sold, and the proceeds are invested in a new one, or where the old homestead is traded off and a new one acquired in exchange, that the new homestead, to the extent in value of the old, should be exempt from liability for existing debts, because the debtor's exemption is not thereby increased.

The plaintiffs in this case must have regarded the undivided

half of lot 3 as equal in value to their homestead in block 21, or they would not have accepted the undivided half of lot 3 in exchange for the property in block 21. The property thus received in exchange the plaintiffs may hold exempt from the debt in question. Their creditors will thereby sustain no damage. But in addition to the property received in exchange the plaintiffs claim the right to hold other property exempt, to-wit: the other undivided half of lot 3. If this can be done it is clear that, through the exchange, the plaintiffs will acquire a greater exemption than they held before, to the extent of the value of the undivided half of lot 3. In other words, the plaintiffs will be enabled to exempt the one-half of the purchase price of lot 3, and the one-half of the sum expended in the erection of a two-story building thereon, in addition to the old homestead, or, which is the same thing, property its equivalent in value. We think the plaintiffs cannot, in such manner, so prejudice the rights of creditors. The undivided half of the south half of lot 3 in question is liable to the defendants' judgment, and was properly sold therefor. The court erred in setting the sale aside.

REVERSED.